IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| GERALD DEAN DAVIS, # 274144, | ) Civil Action No. 3:04-1711-HFF-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| PAULA A. BREWSTER; ) | |
| JOYCE L. HUFF; ) | |
| EDGAR GUTHRO; AND ) | |
| TONY FISHER, OF THE SPARTANBURG ) | |
| PUBLIC SAFETY DEPARTMENT, ) | |
| ) **REPORT AND RECOMMENDATION** | |
| Defendants. ) | |
| ) | |

Plaintiff, Gerald Dean Davis, filed this action on May 28, 2004.[1] Defendants, all employees of the Spartanburg Public Safety Department, are Paula Brewster ("Brewster"), Joyce Huff ("Huff"), Edgar Guthro ("Guthro"), and Tony Fisher ("Fisher").[2] Defendants filed a motion for summary judgment on December 16, 2004. Because Plaintiff is proceeding pro se, he was advised on December 17, 2004, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. On January 3, 2005, Plaintiff filed a memorandum in opposition to summary judgment.

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the court.

[2] Defendants are sued in their individual capacities only. See Complaint at 1 (case caption) and 2.

DISCUSSION

A number of armed robberies were committed in the Spartanburg, South Carolina area from March 16 to April 29, 1999. The Pine Street Liquor store, a Substation II restaurant, a Quick Credit store, a Kentucky Fried Chicken restaurant ("KFC"), and the Regal Converse Cinemas were among the establishments affected.

As part of the investigation of the Substation II robbery, Brewster obtained cell phone records of a cellular phone stolen during that robbery on April 22, 1999. Brewster Aff., Para. 11. Brewster determined that some of the phone calls after the robbery were made by Travis Steadman ("Steadman"). Brewster Aff., Para. 11. On May 3, 1999, Steadman was interviewed by Brewster, Guthro, and Huff. Brewster Aff., Para. 12 ; Huff Aff., Para. 4; Guthro Aff., Para. 5. Steadman identified "Slack" as the individual who robbed the Substation II restaurant with Steadman and James Prater ("Prater"). Brewster Aff., Para. 12; Huff Aff., Para. 5; Guthro Aff., Para. 5. The name "Slack" was identified as a nickname for Plaintiff in the Department's Nickname Database. Brewster Aff., Para. 12; Guthro Aff., Para. 5. Steadman confirmed "Slack's" identity when he was shown a picture of Plaintiff. Brewster Aff., Para. 12; Guthro Aff., Para. 5. Steadman also stated that Plaintiff and Prater told him they robbed the liquor store on Pine Street on two occasions. Brewster Aff., Para 12; Guthro Aff., Para. 9; Huff Aff., Para. 6. He also told detectives that he robbed the Quick Credit store with Prater and Plaintiff. Guthro Aff., Para 7; Huff Aff., Para. 7. Additionally, Steadman told detectives that he and Plaintiff robbed a KFC. Guthro Aff., Para. 6, Huff Aff., Para 8. Finally, Steadman admitted to being involved in the Regal Cinemas robbery and identified Plaintiff as the individual who jumped the

counter and robbed the Regal Cinemas. Guthro states that on May 5, 1999, Plaintiff admitted that he took part in the Regal Cinemas and Quick Credit robberies and used the cell phone stolen during the robbery of the Substation II. Guthro Aff.

Brewster presented seven warrants against Plaintiff to a magistrate. She provided the magistrate with police reports, cell phone records, and the interviews with Steadman. Brewster contends that Steadman's interviews were corroborated by information received from witnesses to the robbery and the physical description of Plaintiff matched the description of suspects involved in the robberies. Brewster Aff.

On May 5, 1999, Plaintiff was served with multiple warrants charging him with armed robbery. Fisher Aff., Ex. A. On April 10, 2001, Plaintiff was convicted of robbery of the Regal Cinemas. He was sentenced to ten years in prison. On August 21, 2001, the remaining robbery charges against Plaintiff were dismissed.

Plaintiff alleges that his state and federal rights were violated because he was illegally seized, maliciously prosecuted, maliciously arrested, and subjected to false imprisonment. He also alleges claims for abuse of process, negligent supervision, and breach of duty. Defendants argue that they are entitled to summary judgment because: (1) there is no evidence Defendants Guthro, Fisher, or Huff violated any federal or state rights of Plaintiff; (2) Fisher cannot be held liable on a theory of supervisory liability; (3) Plaintiff may not recover for damages as to the Regal Cinemas charge because he has not shown that his conviction has been overturned;[3] (4) Defendants are

---

[3] Plaintiff cannot maintain an action as to his arrest, imprisonment, and prosecution for the Regal Cinemas robbery for which he was convicted as he has not shown that he has successfully
(continued…)

entitled to qualified immunity; (5) the South Carolina Tort Claims Act bars any state law causes of action; and (6) no constitutional violation occurred because Plaintiff's injuries were de minimis.[4]

    1.    <u>Respondeat Superior</u>

Plaintiff alleges that Fisher failed to properly train and supervise his subordinates. Fisher argues that he cannot be held liable on a theory of supervisory liability. He states that he was not consulted and did not participate in the investigations of the robbery cases in question. Fisher Aff., Para. 3.

The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. <u>See</u> <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 694 (1978); <u>Fisher v. Washington Metro Area Transit Authority</u>, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails

---

[3](…continued)
attacked his conviction. <u>See</u> <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994)(where a prisoner files an action under § 1983 which would necessarily implicate the validity of his conviction, he may not pursue the damages claim unless and until he successfully attacks the conviction on which his suit is based).

[4]Defendants also argue that Plaintiff cannot establish a constitutional claim because his injuries were de minimis as he was arrested on all the warrants at the same time, he was incarcerated during the same time period pursuant to the warrant for which he was ultimately convicted, and he cannot show that he suffered any additional injuries as a result of his arrest on the other warrants. Plaintiff hypothesizes that his bail would have been set lower and he could have made bail if he was arrested on only one charge.

to take corrective action as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

Plaintiff has not alleged that Defendant Fisher was personally responsible for any of the alleged incidents. Further, Plaintiff has not shown that Fisher deliberately indifferent to, or tacitly authorized, any of the alleged actions or inactions. Thus, Plaintiff fails to show that Fisher is liable on a theory of respondeat superior or supervisory liability.

    2.    Qualified Immunity

Defendants argue that they are entitled to qualified immunity in their individual capacities. Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The analysis of the defense of qualified immunity is examined using a two-step analysis. See Saucier v. Katz, 533 U.S. 194, 201 (2001). The first task is to determine whether the plaintiff has alleged the deprivation of a constitutional right. Id. at 200-201  If the answer is yes, the next task is to determine "whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right." Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir.2002). Thus, liability will not be imposed "when an officer violates [a constitutional right]" unless "a reasonable officer would know that the specific conduct at issue was impermissible." Rogers v. Pendleton, 249 F.3d 279, 285 (4th Cir.2001); see Anderson v. Creighton, 483 U.S. 635, 638-39 (1987).

To establish a deprivation of his constitutional rights, Plaintiff must show a lack of probable cause for his arrest, imprisonment,[5] and prosecution.[6]  "Only where … [a] warrant application is so lacking in indicia of probable cause as to render the official belief in its existence unreasonable will the shield of immunity be lost." Malley v. Briggs, 475 U.S. 335 (1986). In Anderson v. Creighton, the Supreme Court set forth the underlying rationale for this favorable standard, observing that "[i]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and … like other officials who act in ways they reasonably believe to be lawful[,] [they] should not be held personally liable." 483 U.S. at 641.

Probable cause will be found to exist when "the facts and circumstances within an officer's knowledge--or of which he possesses reasonably trustworthy information--are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being

---

[5]Section 1983 actions premised on alleged false arrest and/or false imprisonment claims are also analyzed as unreasonable seizures under the Fourth Amendment. See, e.g., Brown v. Gilmore, 278 F.3d at 367 (recognizing that a plaintiff alleging a § 1983 false arrest claim needs to show that the officer decided to arrest him without probable cause to establish an unreasonable seizure under the Fourth Amendment); Rogers v. Pendleton, 249 F.3d at 294 (claims of false arrest and false imprisonment "are essentially claims alleging a seizure of the person in violation of the Fourth Amendment").

[6]There is no independent cause of action for malicious prosecution under § 1983. A "malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." Lambert v. Williams, 223 F.3d 257, 261 (4th Cir.2000). In order for a plaintiff to state a section 1983 malicious prosecution claim for a seizure violative of the Fourth Amendment, the defendant must have "seized [plaintiff] pursuant to legal process that was not supported by probable cause and that the criminal proceedings [have] terminated in [plaintiff's] favor." Brooks v. City of Winston-Salem, 85 F.3d 178, 183-84 (4th Cir. 1996).

committed." Wadkins v. Arnold, 214 F.3d 535, 539 (4th Cir. 2000) (citing Brinegar v. U.S., 338 U.S. 160, 175-76 (1949)). While probable cause demands "more than a mere suspicion, … evidence sufficient to convict is not required." Taylor v. Waters, 81 F.3d 429, 434 (4th Cir. 1996) (citing Wong Sun v. United States, 371 U.S. 471, 479 (1963)). Reasonable law officers need not "resolve every doubt about a suspect's guilt before probable cause is established." Torchinsky v. Siwinsky, 942 F.2d 257, 264 (4th Cir. 1991)(citation omitted).

    Plaintiff has not shown a lack of probable cause. Steadman positively identified Plaintiff as being involved in the armed robberies. See Brewster Aff.; Huff Aff.; Guthro Aff. Brewster states she matched cellular telephone calls from the phone stolen in the Substation II robbery to phone numbers of members of Plaintiff's family and friends. Brewster Aff. Steadman told officers he saw Plaintiff use the stolen cell phone. Brewster Aff.; Huff Aff.; Guthro Aff. The physical description of Plaintiff is similar to descriptions of the suspect in the robberies. Brewster Aff; Huff Aff; Guthro Aff; Exhibits to Fisher Aff. Steadman reported that a blue Buick was used in the Substation II robbery. Brewster Aff., Para. 13. He also reported that Plaintiff wore masks during the liquor store robberies. Eyewitnesses reported that a Blue Buick or Oldsmobile was used in the Substation II robbery. There are also eyewitness accounts of masks during the robberies. Exhibits to Fisher Aff.

    Plaintiff, in his memorandum in opposition, argues that probable cause does not exist because Steadman was an unreliable informant and argues that some information included in

incomplete transcripts of tapes of police interviews with Steadman[7] conflicts with eyewitness reports. He also claims that Steadman's accounts of the robberies are at times unbelievable. Additionally, Plaintiff claims that the numbers called from the stolen cell phone do not implicate him. A facially valid search warrant will be found to violate the Fourth Amendment if it contains false or misleading statements that are "necessary to the finding of probable cause." Wilkes v. Young, 28 F.3d 1362, 1365 (4th Cir.1994), cert. denied, 513 U.S. 1151 (1995)(quoting Franks v. Delaware, 438 U.S. 154, 156 (1978)). The party challenging the warrant must "make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." Franks at 156. Plaintiff has not made such a showing.

    3.    <u>State Claims</u>

Plaintiff appears to have alleged claims for false arrest/false imprisonment and malicious prosecution under South Carolina law. Defendants argue that Plaintiff's state law claims are barred by the provisions of the South Carolina Tort Claims Act and he fails to establish his claims under South Carolina law. As Plaintiff fails to show that Defendants violated his rights under § 1983 (as discussed above), it is recommended, pursuant to 28 U.S.C. § 1367(c)(3), that any state law claims be dismissed. Alternatively, if Plaintiff's claims are considered on the merits, he fails to establish his claims under state law, as discussed below.

---

[7]Brewster, Guthro, and Huff state that interviews with Steadman were recorded on tape, but that the tapes no longer exist as it is department policy to either destroy or re-use the tapes once the criminal case is closed. They also state they reviewed the transcripts relating to Steadman's statements and determined the transcripts are not a complete account of their interviews. Brewster Aff., Para. 19; Guthro Aff., Para. 10; Huff Aff, Para. 10.

      A.    <u>False Arrest/False Imprisonment</u>

In order to recover under a theory of false imprisonment, a plaintiff must show that (1) the defendant restrained him; (2) the restraint was intentional, and (3) the restraint was unlawful. <u>Jones v. Winn Dixie Greenville</u>, 456 S.E.2d 429, 432 (S.C. Ct. App. 1995). "An action for false imprisonment may not be maintained where the plaintiff was arrested by lawful authority." <u>Gist v. Berkeley County Sheriff's Dep't</u>, 521 S.E.2d 163, 165 (S.C.Ct. App. 1999); <u>see</u> <u>also</u> <u>Watkins v. Mobil Oil Corp.</u>, 313 S.E.2d 641 (S.C.Ct. App. 1984). "The fundamental issue in determining lawfulness is whether there was probable cause to make the arrest. Probable cause is defined as a good faith belief that a person is guilty of a crime when this belief rests upon such grounds as would induce an ordinarily prudent and cautious person, under the circumstances, to believe likewise." <u>Gist</u>, 521 at 165 (citations omitted). As discussed above, Defendants had probable cause to arrest Plaintiff.

      B.    <u>Malicious Prosecution</u>

Under South Carolina law, the elements of malicious prosecution are:

(1) the institution or continuation of original judicial proceedings, either civil or criminal;

(2) by, or at the instance of the defendants;

(3) termination of such proceedings in plaintiff's favor;

(4) malice in institution of such proceedings;

(5) want of probable cause; and,

(6) resulting injury or damage.

9

Jordan v. Deese, 452 S.E.2d 838, 879 (S.C. 1995), quoting Gaar v. North Myrtle Beach Realty Co., Inc., 339 S.E.2d 887, 889 (S.C. Ct. App. 1986). As discussed above, Defendants have shown that there was probable cause to arrest Plaintiff.

## CONCLUSION

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc 20) be granted.

                Respectfully submitted,

                s/Joseph R. McCrorey
                United States Magistrate Judge

August 5, 2005
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

# Notice of Right to File Objections to Magistrate Judge's Report and Recommendation
# &
# The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See Wright, supra,; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201
